ARTHUR R. LEHMAN, L.L.C.
Arthur R. Lehman, Esq. (AL-8819)
Attorneys for Plaintiff
52 Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 697-2715


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x     Case No. 06-cv-8152 (LBS)

MASSIVEMEDIA, INC.                                     :

                                    Plaintiff,         :     COMPLAINT

            - against -                                :     Plaintiff Demands
                                                              Trial By Jury
NATIONAL MEDIA SERVICES, INC.;                         :
ERIC DRUCKER; and JAMES P. FREELEY,
                                                       :
                                    Defendants.
------------------------------------------------------------x

       Plaintiff Massivemedia, Inc., by its undersigned attorneys, as and for its complaint

against the defendants National Media Services, Inc.; Eric Drucker; and James P. Freeley,

alleges as follows:

The Parties

       1.     Plaintiff Massivemedia, Inc. ("Massivemedia") is a corporation organized

under the laws of the State of New York and maintains its principal place of business in the City,

County, and State of New York.

       2.     Upon information and belief, defendant National Media Services, Inc.

("National Media") is a corporation organized under the laws of the State of New York and

maintains its principal place of business in the City, County, and State of New York.

3.    Upon information and belief, defendant Eric Drucker ("Drucker") is a citizen of the State of New York and resides in the County of Queens, City and State of New York.

4.    Upon information and belief, defendant James P. Freeley ("Freeley") is a citizen of the State of New York and resides in the County of Queens, City and State of New York.

<u>Jurisdiction and Venue</u>

5.    Jurisdiction is based on 28 U.S.C. §1331, and principles of pendent jurisdiction. Certain claims arise under the Copyright Act, 17 U.S.C. §101 et seq., and the Lanham Act, 15 U.S.C. §1125, and jurisdiction is also based on 28 U.S.C. §§1331, 1337, and 1338, and on 15 U.S.C. §1121. Defendants are subject to personal jurisdiction in the Southern District of New York, and venue is appropriate in the United States District Court for the Southern District of New York under 28 U.S.C. §1391.

<u>The Underlying Facts</u>

6.    Plaintiff is a media and marketing company engaged in the business of "out-of-home" advertising, or advertising that attempts to reach consumers while they are not at home, including product promotions, outdoor projection advertising, field marketing, guerilla advertising, mobile and wrapped vehicle advertising. Plaintiff began operations in 1994 and has developed hundreds of clients for whom it performs services, including, without limitation, such companies as Nike, Toyota, NBC, Subaru, Evian, and Playstation. From its inception, Massivemedia grew to a company with annual revenues in excess of $7 million.

7.    Plaintiff has spent, and is continuing to spend, large sums of money and

2

time in locating clients, ascertaining the particular needs and preferences of clients, and collecting other valuable information concerning its clients. In preparing the advertising campaigns for its clients, plaintiff has developed and recorded in its client lists and files (the "Client Files") confidential and proprietary information such as type of advertising preferred, times and places for advertising, target markets and demographic information, cyclical needs of the client, the identities of the individuals at the clients' offices who are in charge of placing out-of-home advertising, the direct email addresses and telephone numbers of such individuals, and the identities and contact information of vendors and suppliers who provide teams of personnel to assist plaintiff on individual assignments. The aforementioned contents of the Client Files are not readily ascertainable from public sources, were compiled after years of painstaking effort and expense, and are valuable trade secrets of plaintiff, and plaintiff has at all times kept its Client Files confidential. These Client Files are maintained on plaintiff's computers, and access to such Client Files is protected by passwords.

8.     Plaintiff maintains internal files of photographs that it has taken for record keeping and promotional purposes and as proof of performance of promotions and out-of-home advertising events which plaintiff has conducted on behalf of its clients.

Drucker's Employment

9.     Plaintiff hired Drucker in or about June 2005 pursuant to a written offer letter which provided for base compensation, retirement plan contributions, medical benefits, vacation benefits, and commissions on new business generated by Drucker. Drucker's duties included supervision of certain advertising projects, and he reported directly to Robert Rukstalis, founder and president of plaintiff.

3

10.    On information and belief, prior to becoming employed by plaintiff, Drucker had no out-of-home advertising experience.

11.    While employed by plaintiff, Drucker had access to the Client Files and learned the confidential information contained therein, and became acquainted with other secret and confidential information relating to plaintiff's business and marketing plans and relationships with contractors and vendors who assist plaintiff in its advertising activities.

12.    On information and belief, in March 2006 or earlier, Drucker secretly formulated a plan to leave plaintiff's employ and compete with plaintiff in the out-of-home advertising business.

13.    On information and belief, Drucker caused defendant National Media to be incorporated on March 20, 2006.

14.    On information and belief, Drucker registered the domain name www.nationalmediaservicesinc.com on or about March 20, 2006.

15.    Drucker did not disclose to plaintiff that Drucker had formulated a plan to leave plaintiff's employ and compete with plaintiff, incorporated defendant National Media, or registered the domain name www.nationalmediaservicesinc.com, but instead concealed those facts from plaintiff.  Plaintiff was unaware that Drucker was making plans to leave plaintiff's employ and believed that Drucker was continuing to work for plaintiff in good faith, and plaintiff did not restrict Drucker's access to plaintiff's clients, vendors, or computer files, which plaintiff would have done if it knew that Drucker was planning to leave plaintiff's employ.

16.    On information and belief, after making his decision to leave plaintiff's employ, Drucker remained in plaintiff's employ and on plaintiff's premises for more than four

4

months, but failed to perform all of his duties for the sole benefit of plaintiff. Instead Drucker

developed plans for improving his ability to engage in an out-of-home advertising business

which he did not impart to plaintiff. For example, Drucker did not offer the corporate name

National Media Services, Inc. or domain name www.nationalmediaservicesinc.com to plaintiff

for use by plaintiff in connection with plaintiff's business, recommend any changes or additions

to plaintiff's web site, or suggest that plaintiff expand or change its business in any respect.

17.     On information and belief, between March and July 2006, Drucker used

the plaintiff's time, computers, assets, proprietary information, resources, and personnel to

establish and develop National Media Services and prepare to launch National Media Services as

a fully functioning advertising company immediately upon his departure from plaintiff.

<u>Freeley's Engagement by Plaintiff</u>

18.     Plaintiff engaged Freeley as an independent contractor in or about July

2005. Freeley's duties included maintenance of plaintiff's computer system, including plaintiff's

Client Files and passwords. By virtue of his duties, Freeley had unfettered access to all aspects

of plaintiff's computer system.

19.     In addition to his duties with regard to plaintiff's computer system,

Freeley was permitted to work in a sales function directly with certain of plaintiff's most

lucrative clients, including Infinity automobiles and H&M, the large clothing retailer ("H&M").

20.     In March 2006, plaintiff performed advertising services for H&M.

Freeley was one of plaintiff's representatives who worked on that advertising project. The

project consisted of distribution of "H&M Magazines" in New York City; Washington, D.C.;

Philadelphia; Chicago; San Francisco; and Boston. Plaintiff earned a profit from the

performance of services on this project.

21.    In August 2006, H&M sent an email to Freeley at his Massivemedia email address asking whether plaintiff would be interested in distributing 200,000 magazines for H&M, similar to the March 2006 project.

22.    The offer by H&M to engage plaintiff to distribute H&M magazines for H&M presented a substantial business opportunity to plaintiff which plaintiff was ready, willing, and able to undertake.

<u>The Launch of National Media Services</u>

23.    In early August 2006, without notice or prior warning, Drucker abandoned his employment with plaintiff and immediately publicized the opening of National Media and launched his <u>www.nationalmediaservicesinc.com</u> web site.

24.    On information and belief, in or before August 2006, Freeley joined Drucker in National Media, but did not disclose his involvement to plaintiff.

25.    On information and belief, by virtue of their positions as shareholders, officers, and directors of National Media Services, Drucker and Freeley have the ability to supervise and control National Media Services, to solicit clients on behalf of National Media, and to select photographs for use on the National Media Services web site and newsletters, and Drucker and Freeley have a direct financial interest in the operations of National Media Services.

26.    On information and belief, defendants diverted the business that was offered by H&M to plaintiff and performed such business themselves, and earned profits in excess of $100,000 from such business.

27.    Defendants posted photographs on the National Media web site of certain

advertising projects and promotions which plaintiff had conducted for Phillips Union Whiskey, Adidas, Coors, Redken, ABC, Malibu Rum, Verizon, Intel, Unilever, CoffeeMate, Playstation, Filene's Basement, E!, EA Entertainment, and NBC (the "Photographs"). Drucker had access to information concerning the advertising projects and the Photographs only by virtue of his employment with plaintiff.

28.    At all times, the Photographs were the property of plaintiff. Drucker misappropriated plaintiff's Photographs, which are the property of plaintiff, and used these Photographs on the National Media web site without permission from plaintiff. In addition, defendants used the Photographs in their newsletters that they sent to potential customers, including plaintiff's clients.

29.    On information and belief, Drucker and Freeley took with them when they left plaintiff's offices and now have in their possession some of plaintiff's confidential documents or copies thereof, including plaintiff's client email list and vendor contact list, and other documents from plaintiff's Client Files.

30.    On information and belief, on or about August 1, 2006, while still in plaintiff's employ, defendants used the Client Files belonging to plaintiff, including plaintiff's client email list, to generate and distribute an email announcement sent to plaintiff's clients concerning the establishment of National Media.

31.    On information and belief, on or about September 7, 2006, defendants used the Client Files belonging to plaintiff, including plaintiff's client email list, to generate and distribute another email announcement sent to plaintiff's clients concerning the establishment of National Media and its services.

32.    On information and belief, in defendants' mutual behalf, Drucker and Freeley have solicited plaintiff's clients, including H&M, used and revealed confidential information belonging to plaintiff, and induced plaintiff's clients to engage defendants instead of plaintiff.

As a First Cause of Action

(Copyright Infringement)

33.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32, above, as if fully set forth herein.

34.    This cause of action arises under the Copyright Laws of the United States, and in particular 17 U.S.C. §501 et seq.

35.    Plaintiff's Photographs are wholly original creations and are copyrightable subject matter under the laws of the United States. Plaintiff is and has always been the proprietor of all right, title and interest in and to the copyrights on the Photographs.

36.    Plaintiff received registration for its copyrights on its Photographs in the United States Copyright Office under registration number VAu 705-690 on September 14, 2006.

37.    Defendants have used plaintiff's Photographs on the web site www.nationalmediaservicesinc.com without permission of plaintiff and in violation of law.

38.    On or about September 26, 2006, defendants sent an email to some or all of plaintiff's clients containing a newsletter promoting National Media. In their newsletter, the defendants used plaintiff's Photographs without permission and in violation of law.

39.    Defendants' use of plaintiff's Photographs on defendants' web site constitutes knowing, willful and deliberate copyright infringement in violation of the exclusive

8

rights of plaintiff.

40.    Plaintiff has demanded that defendants remove all of plaintiff's Photographs from the National Media web site and cease and desist from all wrongful use of plaintiff's Photographs, but defendants have refused to do so.

41.    Drucker and Freeley have intentionally induced or encouraged direct infringement of plaintiff's copyrights by National Media and have profited from the infringements of National Media by declining to exercise their rights to stop or limit the infringements by National Media.

42.    Plaintiff is entitled to recover the actual damages suffered by it as a result of defendants' copyright infringement, together with any profits of the defendants attributable to such infringement, and any other damages to which plaintiff is entitled, together with statutory damages in the amount of $150,000 for each photograph belonging to plaintiff that defendants used on defendants' web site, for a total of $5,250,000.

As a Second Cause of Action

(Lanham Act–False Designation of Origin)

43.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41, above, as if fully restated herein.

44.    National Media uses the Photographs depicting plaintiff's advertising activities in defendants' www.nationalmediaservicesinc.com web site and in its newsletters to advertise and promote defendants' services and to influence potential customers to engage defendants to perform advertising services.

45.    The Photographs of plaintiff's advertising projects used by National

9

Media on its web site falsely designate the source or origin of the advertising activities depicted in the Photographs, and are likely to cause confusion or mistake, or to deceive, as to (a) plaintiff's affiliation, connection, or association with National Media, or (b) the origin sponsorship, or approval by plaintiff of National Media's services. Defendants used plaintiff's Photographs in order to deceive potential clients and make potential clients believe that National Media was somehow responsible for the successful advertising promotions conducted by plaintiff that are displayed in the Photographs.

46.    The Photographs of plaintiff's advertising campaigns that National Media posts on its web site suggest that National Media was involved in the activities portrayed in the Photographs, and defendant's marketing claims are deceptive to the extent that they do not disclose that plaintiff, not National Media, was responsible for such advertising campaigns; that National Media has no experience, competence, or capability with respect to such advertising activities; and that plaintiff and National Media are not affiliated in any way.

47.    National Media maintains a section of its web site under the heading "About Us." The National Media "About Us" page contains four photographs, one of which is one of the copyrighted Photographs that belongs to plaintiff and shows advertising promotions conducted by plaintiff, not defendants, for Redken in San Francisco in October 2001.

48.    National Media maintains a section of its web site under the heading "Gallery." The National Media Gallery contains 22 photographs that show advertising promotions conducted by plaintiff, not defendants. Fifteen of the photographs in the National Media Gallery are copyrighted Photographs that belong to plaintiff and relate to advertising campaigns conducted by plaintiff, not defendants, for CoffeeMate in Boston and Philadelphia in

April 2006, for Playstation in Los Angeles in May 2006, for Phillips Union whiskey in Austin in

May 2006, for Redken in San Francisco in October 2001, for Coors in Philadelphia in July 2005,

for Los Angeles in 2005, for Dave & Busters in New York in May and June 2006, for Interface

in Chicago in May 2006, for Filene's Basement in New York in October and November 2004,

and for E! in Chicago in March 2006.

49.    National Media maintains a section of its web site under the heading

"Why National Media Services."  This page contains four photographs, all of which are

copyrighted Photographs that belong to plaintiff and show advertising promotions conducted by

plaintiff, not defendants, for Coors in Philadelphia in July 2005, for Playstation in Los Angeles

in May 2006, for Interface in Chicago in May 2006, and for E! in Chicago in March 2006.

50.    National Media maintains a section of its web site under the heading

"Contact Us."  This page contains three photographs, all of which are copyrighted Photographs

that belong to plaintiff and show advertising promotions conducted by plaintiff, not defendants,

for Six Flags in New England in March and April 2006, for R.H. Donnelly in Chicago in June

and July 2006, and for Unilever in New York in May 2006.

51.    National Media maintains a page on its web site with the heading "Mobile

Event Marketing."  On this page, National Media states, "We are the industry's premiere mobile

event marketing and promotion company." Below this statement, National Media shows four

photographs that show advertising promotions conducted by plaintiff, not defendants.  Three of

the four photographs on the National Media web page are copyrighted Photographs that belong

to plaintiff and show advertising promotions conducted by plaintiff, not defendants, for Redken

in Minneapolis in 2003, for Intel in New York City in March 2006, and for Verizon in 2005 and

2006.

52.     National Media maintains a page on its web site with the heading "Segway Squads." On this page, National Media states, "Our segway teams can product sample as well as distribute collateral and premiums." Below this statement, National Media shows two photographs that are copyrighted Photographs that belong to plaintiff and show advertising promotions conducted by plaintiff, not defendants, for E! in New York in March 2006 and for EA Entertainment in New York in October 2005.

53.     National Media maintains a page on its web site with the heading "Street Theater Projections." On this page, National Media shows two photographs that are copyrighted Photographs that belong to plaintiff and show advertising promotions conducted by plaintiff, not defendants, for Unilever in New York in May 2006 and for Playstation in Los Angeles in May 2006.

54.     National Media maintains a page on its web site with the heading "Nightlife/Bar." On this page, National Media shows four photographs that are copyrighted Photographs that belong to plaintiff and show advertising promotions conducted by plaintiff, not defendants, for Phillips Union Whiskey in Austin in May 2006.

55.     National Media maintains a page on its web site with the heading "Static Clings." On this page, National Media shows two photographs, one of which is one of the copyrighted Photographs that belongs to plaintiff and shows advertising promotions conducted by plaintiff, not defendants, for Phillips Union Whiskey in Austin in May 2006.

56.     National Media maintains a page on its web site with the heading "Custom Programs." On this page, National Media states, "Our custom programs get the attention of your

target and creates a lasting impression" and "Our team of dedicated experts can execute your existing concept or create an exciting program based on your concept.  National Media Services delivers the most successful custom campaigns in the industry."  National Media shows four photographs, one of which is one of the copyrighted Photographs that belongs to plaintiff and shows advertising promotions conducted by plaintiff, not defendants, for Coors Light in Philadelphia in July 2005.

57.    National Media maintains a page on its web site with the heading "Premiums."  On this page, National Media states, "Our trained brand ambassadors, representatives and managers are expert premium and promotional item distributors."  National Media shows two photographs which are copyrighted Photographs that belong to plaintiff and show advertising promotions conducted by plaintiff, not defendants, for NBC in Los Angeles in July 2001 and for ABC in New York in March 2003.

58.    National Media maintains a page on its web site with the heading "Wild Postings."  On this page, National Media states, "Our Wild Postings take a market by storm with the wildest wild posting campaigns in the industry."  National Media shows two photographs which are copyrighted Photographs that belong to plaintiff and show advertising promotions conducted by plaintiff, not defendants, for Phillips Union Whiskey in Austin in May 2006 and for Adidas in New York in January 2006.

59.    Other photographs used by National Media in its web site were taken by persons other than plaintiff, but nevertheless relate to advertising promotions conducted by plaintiff, not defendants.

60.    National Media's advertisements and marketing claims were disseminated

13

in interstate commerce.

61.    National Media's advertisements and marketing claims were likely to affect purchasing decisions.

62.    Certain customers of plaintiff have actually been confused or deceived by defendants' wrongful use of the Photographs.  For example, one customer of plaintiff sent an email to plaintiff dated September 27, 2006 in which plaintiff's customer stated, "I received an email from a media company that's new to me and went to their web site where there is a photo identical to the one you guys sent Media Life for the hummer/screen article.  Just wondering if it's a generic photo or yours."

63.    Plaintiff was injured, or is likely to be injured, by the National Media's advertisements and marketing claims.

64.    Defendant's conduct violates the Lanham Act, 15 U.S.C. §1125(a).

65.    Plaintiff has been damaged in an amount to be shown at trial.

As a Third Cause of Action

(Lanham Act–False Advertising)

66.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 64, above, as if fully restated herein.

67.    The marketing claims made by defendants National Media and Drucker in the www.nationalmediaservicesinc.com web site and newsletter were made to advertise and promote defendants' services and to influence potential customers to engage defendants to perform advertising services.

68.    The photographs of plaintiff's advertising projects used by National Media

14

on its web site misrepresent the nature, characteristics, and qualities of National Media's services and expressly or impliedly compare National Media's services with plaintiff's services in a misleading and unfair manner.

69.    For example, the photographs of plaintiff's advertising campaigns that National Media posts on its web site suggest that National Media was involved in the activities portrayed in the photographs, and defendant's marketing claims are deceptive to the extent that they do not disclose that plaintiff, not National Media, was responsible for such advertising campaigns, and that National Media has no experience, competence, or capability with respect to such advertising activities.

70.    National Media's advertisements and marketing claims were disseminated in interstate commerce.

71.    National Media's advertisements and marketing claims were likely to affect purchasing decisions.

72.    Certain customers of plaintiff have actually been confused or deceived by defendants' wrongful use of the Photographs.

73.    Plaintiff was injured, or is likely to be injured, by the National Media's advertisements and marketing claims.

74.    Defendant's conduct violates the Lanham Act, 15 U.S.C. §1125(a).

75.    Plaintiff has been damaged in an amount to be shown at trial.

<u>As a Fourth Cause of Action</u>

(Breach of Fiduciary Duty)

76.    Plaintiff repeats and realleges each and every allegation contained in

15

paragraphs 1 through 74, above, as if fully restated herein.

77.    As a key employee of plaintiff, Drucker owed fiduciary duties to plaintiff and was bound at all times to exercise utmost good faith and loyalty to plaintiff.

78.    As a key consultant to plaintiff, Freeley owed fiduciary duties to plaintiff and was bound at all times to exercise utmost good faith and loyalty to plaintiff.

79.    Plaintiff reposed trust and confidence in Drucker and Freeley and allowed Drucker and Freeley to participate in all aspects of plaintiff's business and have access to plaintiff's confidential and proprietary information, including plaintiff's computers, files and client email list.

80.    On information and belief, Drucker and Freeley breached their fiduciary duties to plaintiff by, among other things, secretly incorporating National Media while still engaged by plaintiff; using plaintiff's customer and vendor contacts; stealing plaintiff's email mailing list; and diverting the H&M magazine distribution opportunity from plaintiff to National Media.

81.    By reason of the foregoing, Drucker and Freeley must disgorge all compensation received by them during the period of their disloyalty and repay all such compensation to plaintiff

82.    Plaintiff has been damaged in an amount to be shown at trial.

<u>As a Fifth Cause of Action</u>

(Misappropriation of Trade Secrets)

83.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 81, above, as if fully restated herein.

84.    The materials contained in plaintiff's Client Files, including plaintiff's client email list, constitutes confidential and proprietary business information and trade secrets of plaintiff.

85.    On information and belief, defendants used and are using plaintiff's trade secrets in breach of confidence and duty, and as a result of physical taking.

86.    Plaintiff has been damaged in an amount to be determined at trial.

### As a Sixth Cause of Action

### (Unfair competition)

87.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 85, above, as if fully set forth herein.

88.    Defendants' conduct constitutes unfair competition.

89.    By reason of the foregoing, plaintiff is entitled to an award of damages in an amount in excess of $100,000.00

### As a Seventh Cause of Action

### (Tortious Interference)

90.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 80, above, as if fully restated herein.

91.    Defendants intentionally and without justification interfered with plaintiff's relationship with H&M.

92.    On information and belief, defendants used wrongful means in their interference with plaintiff's relationship with H&M.  Among other things, Freeley misled plaintiff by indicating that Freeley was pursuing the H&M opportunity on behalf of plaintiff,

17

when in truth, on information and belief, Freeley was pursuing the H&M opportunity on behalf of defendants. Accordingly, plaintiff was discouraged from directly pursuing the H&M opportunity through other employees. In addition, defendants would not have been able to execute the H&M magazine distribution project if defendants did not have access to vendor information contained in plaintiff's computers that Drucker and Freeley took with them when they left plaintiff.

93.    Except for the conduct of the defendant, the plaintiff would have entered into or continued its distribution of 200,000 magazines in August 2006.

94.    As a result of the defendant's tortious interference with plaintiff's business relationships and other wrongful acts, H&M did not award to plaintiff the contract for the distribution of 200,000 magazines in August 2006.

95.    By reason of the foregoing, plaintiff has suffered damages in an amount in excess of $100,000 by virtue of its loss of profits on the H&M magazine distribution contract, and has suffered additional damages in an amount to be proved at trial.

<u>As an Eighth Cause of Action</u>

(Unjust Enrichment)

96.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 95, above, as if fully set forth herein.

97.    Defendants have been unjustly enriched.

98.    By reason of the foregoing, plaintiff is entitled to an award of damages in an amount in excess of $100,000.00

18

As a Ninth Cause of Action

(Conversion)

99.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33, above, as if fully set forth herein.

100.    In or about July and August 2006, Drucker made unauthorized charges to plaintiff's credit card for personal travel and hotel charges and personal items purchased by Drucker. In addition, plaintiff had purchased an airline ticket to be used by Drucker for approved travel. However, the approved trip was canceled before the ticket was used, but Drucker did not return the ticket to plaintiff. Instead, Drucker used the ticket for unapproved personal travel.

101.    The value of the property that Drucker converted from plaintiff is $1722.26.

As a Tenth Cause of Action

(Equitable relief)

102.    The wrongful acts set forth above are presently occurring, will continue in the future, and will irreparably injure plaintiff unless they are enjoined.

103.    Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff Massivemedia, Inc. demands judgment against defendants National Media Services, Inc.; Eric Drucker; and James P. Freeley, and each of them, as follows:

A.    For the acts set forth in plaintiff's first cause of action for copyright infringement,

19

(a)    an award in the amount of the actual damages suffered by plaintiff as a result of defendants' copyright infringement, together with any profits of the defendants attributable to such infringement, and any other damages to which plaintiff is entitled, including statutory damages, with interest thereon, plus its costs and legal expenses, including attorneys' fees and accountants' fees, incurred in connection with the matters set forth herein; and

(b)    For an order

(1)    restraining defendants from infringing on or using in any manner plaintiff's copyrighted photographs; and

(2)    requiring defendants to destroy all photographs in their possession, custody or control which infringe on plaintiff's copyrights.

B.    For the acts set forth in plaintiff's second and third causes of action for violations of the Lanham Act,

(a)    an award in the amount of the three times the actual damages suffered by plaintiff as a result of defendants' violations of the Lanham Act or, in the alternative, all profits of the defendants attributable to such infringement, the costs incurred by plaintiff in connection with corrective advertising, and any other damages to which plaintiff is entitled, with interest thereon, plus its costs and legal expenses, including attorneys' fees and accountants' fees, incurred in connection with the matters set forth

20

herein; and

(b)    For an order

(1)    restraining defendants from using in any manner plaintiff's photographs;

(2)    requiring defendants to destroy all photographs in their possession, custody or control which depict advertising campaigns conducted by plaintiff for plaintiff's clients; and

(3)    requiring defendants to prominently show on their web site a disclaimer of any affiliation, association, or connection with plaintiff, or sponsorship by plaintiff.

C.    For an award of damages in an amount in excess of $100,000 for the acts set forth in plaintiff's forth in plaintiff's fourth through eighth causes of action;

D.    For an award of damages in the amount of $1722.26 for the acts set forth in plaintiff's ninth cause of action;

E.    For an order permanently enjoining the defendants, their agents, servants, employees, representatives and all persons acting in concert with them:

(1)    from directly or indirectly soliciting advertising business from plaintiff's clients;

(2)    from inducing or attempting to induce plaintiff's clients to terminate their business relationships with plaintiff or transfer their advertising business from plaintiff to any other person or entity;

21

      (3)    from using in any manner or disclosing any of plaintiff's

confidential or proprietary information, including any documents

or information taken from plaintiff's Client Files; and

      (4)    ordering defendants to immediately deliver to plaintiff all

documents and copies thereof containing any of plaintiff's

confidential or proprietary information, including all documents

and copies thereof taken from plaintiff's Client Files;

      (5)    for an accounting of all the receipts and profits of defendants

arising out of the wrongful acts set forth above; and

      (6)    imposing a constructive trust on the proceeds of defendants'

wrongful acts as set forth above;

F.    For the costs and disbursements of this action, including attorneys' fees;

and

G.    For such other and further relief as to this Court seems just and proper.

Dated: October 4, 2006

ARTHUR R. LEHMAN, L.L.C.

By _____
Arthur R. Lehman, Esq. (AL-8819)
52 Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 697-2715
Facsimile: (212) 697-2773
Attorneys for Plaintiff

22